```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ANGELO ESPOSITO,

                Petitioner,
                                        AMENDED[1]
       -against-                        MEMORANDUM & ORDER
                                        05-CV-1674(JS)
DALE ARTUS, Superintendent of the
Clinton Correctional Facility,

                Respondent.
----------------------------------X
APPEARANCES:
For Petitioner:         Angelo Esposito, Pro Se
                        93-A-5513
                        Clinton Correctional Facility
                        P.O. Box 2001
                        Danemora, New York 12929

For Respondent:         Robert A. Schwartz, Esq.
                        Assistant District Attorney
                        Nassau County District Attorney's Office
                        262 Old Country Road
                        Mineola, New York 11501
```

SEYBERT, District Judge:

The Petitioner, Angelo Esposito ("Petitioner"), seeks a writ of habeas corpus with regard to his conviction for, inter alia, murder in the second degree. Respondent, Dale Artus, Superintendent of the Clinton Correctional Facility, moves to dismiss on the ground of untimeliness. For the reasons set forth below, the petition is denied and dismissed on the ground that it is untimely pursuant to 28 U.S.C. §§ 2244 and 2254, as amended by

---

[1] This Amended Memorandum and Order solely changes the Conclusion section on page 13. The remaining parts of this Amended Memorandum and Order are the same as the Order filed on March 31, 2006 dismissing the petition as untimely.

the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").

## BACKGROUND

In the morning of December 28, 1991, Petitioner taunted patrons of a gay bar, Pal Joey's, in Bellmore, New York. Shortly thereafter, he left the ShopRite parking lot, which was located across the street from the bar, in pursuit of a vehicle driven by Henry Marquez ("Marquez"), a United States Treasury Agent. Petitioner rammed his car, a 1988 Pontiac Lemans, repeatedly into Marquez's car, which resulted in Marquez being run off the road and into a tree. Marquez suffered fatal injuries. Several days later up in Albany County, Petitioner set fire to the vehicle he used to force Marquez off the road. For these acts, Petitioner was indicted on several counts, including Murder in the Second Degree (depraved indifference).

At trial, the Government's proof included testimony from individuals that Petitioner had accosted at the parking lot, one of whom provided the police with a description of the vehicle, a red car, and the license plate number of the car Petitioner was driving. Police Officer, James Quinn ("Quinn"), who responded to the complaint, later observed Petitioner ramming his car into Marquez's automobile several times. A short time later, Quinn came upon Marquez's vehicle which had crashed into a tree. The red car was nowhere in sight.

2

Subsequently, the police did a license plate check that led them to Petitioner. In addition, two of the individuals that were attacked in the parking lot identified the Petitioner as the individual who accosted them. On January 22, 1992, a vehicle was found in Colonie, New York, heavily damaged by fire. A piece of aluminum from a transmission bell housing, which was found at the intersection where Marquez was forced off the road, matched perfectly to the broken bell housing found on the burned-out Lemans - the car Petitioner was driving the night Marquez died.

Following Petitioner's arrest on January 17, 1992, he waived his <u>Miranda</u> rights and made several statements. Petitioner conceded to the following: he knew Pal Joey's was a gay bar, he and his friend harassed people in the ShopRite parking lot, another vehicle sped out of the parking lot at the same time he did, and he screamed at the other driver as they left the parking lot. Petitioner claimed that he lost sight of the other vehicle when the road ended, and he blew out his right front tire as he made a left turn. The next day, he had a friend install a new tire and rim. Because of the previous night's events and the fact that his girlfriend's family still owed money on the car, Petitioner stole the car and set it on fire.

During Petitioner's trial, his friend, Dennis Pannullo ("Pannullo"), testified that he was with Petitioner on the morning of the incident, that they had been drinking, and that they taunted

3

some people in the ShopRite parking lot. Pannullo further testified that a man in a white car drove up next to Petitioner's car and then offered to buy him a drink. After an oral exchange between Petitioner and the man in the white car, he drove his white car into the side of Petitioner's open car door. Pannullo testified that at that point he kicked the white car, and Petitioner circled the lot and then drove his car into the white car several times, damaging the driver's side door.

Pannullo further testified that Petitioner drove out of the parking lot and was followed very closely behind by the man in the white car. The Petitioner hit the brakes, causing the white car to strike him from behind. Pannullo stated that as Petitioner sped away, he punctured one of his tires on the curb. Pannullo claimed that the pair lost sight of the white car and went home. Another defense witness, Donald Wecklein, an accident reconstruction expert, testified that the damage to the white car was a result of Petitioner moving slowly or while stationery. The damages would have been different had Petitioner been moving at a fast speed.

I. <u>State Court Proceedings</u>

Petitioner's trial commenced in Suffolk County Court on April 26, 1993. Petitioner was convicted on May 4, 1993, of Murder in the Second Degree, Attempted Assault in the Second Degree, two counts of Harassment, Tampering with Physical Evidence, Arson in

the Third Degree, and Aggravated Unlicensed Operation of a Motor Vehicle in the Second Degree. On June 30, 1993, the court sentenced Petitioner as a second felony offender to an indeterminate prison term of twenty-five years to life on the murder conviction and lesser concurrent terms on the other charges.

On June 5, 1995, the New York Supreme Court, Appellate Division, Second Department ("Appellate Division") affirmed the judgment of conviction. See People v. Esposito, 627 N.Y.S.2d 739 (N.Y. App. Div. 1995). On September 27, 1995, the New York Court of Appeals denied leave to appeal. See People v. Esposito, 86 N.Y.2d 841 (1995). Petitioner subsequently sought reconsideration of the Court of Appeals' denial. Petitioner never sought a writ of certiorari from the United States Supreme Court.

Five years after Petitioner's judgment of conviction became final, Petitioner moved to vacate his judgment of conviction under N.Y. C.P.L. § 440.10 on November 17, 2000. On May 14, 2001, the County Court denied Petitioner's motion without a hearing. On August 14, 2001, the Appellate Division denied Petitioner leave to appeal the denial of the motion. On August 20, 2002, Petitioner filed a motion for a writ of error coram nobis in the Appellate Division, alleging ineffective assistance of appellate counsel.

On December 27, 2002, Petitioner filed a second motion to vacate judgment under N.Y. C.P.L. § 440.10, alleging that he was denied Brady material. On May 21, 2003, the County Court denied

that motion. In July 2003, Petitioner moved to reargue the motion, and on September 18, 2003, the Appellate Division denied Petitioner's application for leave to appeal the denial of the second motion.

On November 20, 2003, Petitioner filed a motion for a writ of coram nobis in the Appellate Division arguing that his appellate counsel was ineffective. On March 15, 2004, the Appellate Division denied Petitioner's motion. See People v. Esposito, 772 N.Y.S.2d 879 (N.Y. App. Div. 2004). On August 8, 2004, the Court of Appeals denied Petitioner's motion for reconsideration. See People v. Esposito, 3 N.Y.3d 639 (2004).

## II. Federal Court Proceedings

On March 30, 2005, the Petitioner filed the instant writ of habeas corpus in the Eastern District of New York on the grounds that (1) newly discovered evidence demonstrates his actual innocence of the criminal charges and entitles him to equitable tolling of the statute of limitations, and (2) ineffective assistance of counsel. The Respondent filed a motion to dismiss the petition on the ground that it was untimely pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Petitioner filed his reply to Respondent's motion to dismiss.

## DISCUSSION

## I. Petitioner's Writ Is Untimely.

The one year statute of limitations under the AEDPA

applies to all state convictions that became final after April 24, 1996. See 28 U.S.C. § 2244(d)(1); Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 48 (1997).

> The limitations period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

28 U.S.C. § 2244(d)(1)(A) requires prisoners to file habeas corpus petitions within one year of their convictions becoming final. Petitioner's conviction became final well before the April 24, 1996 effective date of the AEDPA. The statute does not specifically indicate how its time limitations should apply to cases such as this one that became final before the statute's enactment. The Second Circuit has ruled that in such cases, prisoners have a one-year grace period from April 24, 1996 to April 24, 1997 within which to file for habeas corpus relief. See Ross v. Artuz, 150 F.3d 97, 103 (2d Cir. 1998). Therefore, the Petitioner had until April 24, 1997, to file a petition for a writ

of habeas corpus.  Petitioner's March 30, 2005 filing is eight years after this grace period and is therefore untimely.

The AEDPA does, however, provide for the tolling of the one-year limitations period for that "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." See 28 U.S.C. § 2244(d)(2).  Assuming that such tolling is also applicable to the grace period, this Court notes that Petitioner did not file his first motion for state collateral review under § 440 until on, or after, November 16, 2000, which was well-beyond the one-year grace period.  Thus, the one-year period was not statutorily tolled, and accordingly, this Court deems Petitioner's writ as untimely under 28 U.S.C. § 2244(d)(1)(A).

II. Equitable Tolling Does Not Apply In This Case.

The only issue then is whether the doctrine of equitable tolling excuses the Petitioner's failure to comply with the time limitations.  "Equitable tolling applies only in the rare and exceptional circumstance." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation marks and citation omitted).  To invoke the doctrine, a petitioner must show that (1) "extraordinary circumstances prevented him from filing his petition on time," and (2) he "acted with reasonable diligence throughout the period he seeks to toll." Id. (citation omitted).  Conceding that his petition is untimely, Petitioner seeks equitable tolling of the

8

statute of limitations on the ground that newly discovered evidence establishes his actual innocence.

The Supreme Court and the Second Circuit have never held that a claim of actual innocence tolls the AEDPA statute of limitations. See Pace v. DiGuglielmo, 125 S. Ct. 1807, 1815, n.8, 161 L. Ed. 2d 669 (2005); Doe v. Menefee, 391 F.3d 147, 160 (2d Cir. 2004). The Second Circuit stated that it would decide the issue when confronted with a credible claim of actual innocence. Until then, district courts presented with untimely petitions in which a petitioner claims actual innocence must first determine whether the petitioner presented a credible claim of actual innocence. If a petitioner has a credible claim, then the court must determine whether the petitioner pursued such claim with reasonable diligence. Otherwise, the statute of limitations is not tolled. See Menefee, 391 F.3d at 161.

To establish a credible claim of actual innocence, a petitioner must "support his claim 'with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy accounts, or other critical physical evidence – that was not presented at trial.'" Id. (quoting Schlup v. Delo, U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). If new reliable evidence is presented, the court must weigh it against all the evidence pointing to guilt – both admissible and inadmissible - to determine if "it is 'more likely than not that no reasonable juror would have

9

found Petitioner guilty beyond a reasonable doubt.'"  Id. at 162 (quoting Schlup, 513 U.S. at 327).  Therefore, Petitioner may not utilize this procedural window to have his petition reviewed if this Court finds that any reasonable juror considering all the evidence could find him guilty beyond a reasonable doubt.  With this in mind, the Court turns to Petitioner's newly discovered evidence.

Assuming Petitioner has brought forth newly discovered evidence, the Court finds that Petitioner has not acted with reasonable diligence throughout the period he seeks to toll.  Petitioner's newly discovered evidence consists of a note about the victim's weapon (the "Brusa Note") and Officer Quinn's homosexual preference.

In support of his claim of actual innocence, Petitioner relies primarily on the Brusa Note written by Detective Richard Brusa ("Brusa") on the back of a police report.  The Brusa Note purportedly contradicts the testimony of the Government's key witness, Officer Quinn, and establishes that the murder victim, Marquez (a federal agent), may have been armed during his altercation with Petitioner.[2]  Petitioner claims that he first

---

[2]In response to petitioner's second motion to vacate judgment filed in state court in December 2002, the State submitted an affidavit by Detective Brusa, the homicide investigator that was assigned to the case. In that affidavit Brusa stated that he wrote the note on the back of a homicide worksheet and that he and another detective recovered the weapon from Marquez's apartment after his death.  Brusa explained that

10

became aware of this note in November 2002. (Pet'r Mem. 7.) If it had been disclosed to him earlier, Petitioner would have been able "to verify his claim that the decedent was chasing him with a weapon (and not the other way around as the People alleged) and the jury may well have determined [he] was not guilty or guilty of a lesser-included offense." (Pet'r Mem. 8.) The note in question is included in Petitioner's appendix at H-028 and I-011.

The other piece of evidence that Petitioner depends on for his claim of actual innocence is Officer Quinn's homosexual preference. Petitioner claims that because Officer Quinn was gay, his sexual orientation may have colored his testimony at trial, particularly since the victim, Marquez, was gay.[3] Regardless of Quinn's sexual orientation, his testimony at trial was consistent with the physical evidence, and no testimony during an extensive cross-examination suggested Quinn was biased against Petitioner.

Assuming that these two pieces of evidence were newly discovered, the Court finds that Petitioner did not pursue any claims based on them with reasonable diligence. First, David Haberman ("Haberman"), Petitioner's counsel in a civil trial

---

he placed the gun in a safe for safekeeping until it was picked up by one of Marquez's supervisors from the Customs Department. See Petitioner's appendix at I-040, I-041.

[3]Subsequent to the Appellate Division's affirmance of Petitioner's State Court appeal, Quinn commenced a lawsuit in the federal court against the Nassau County Police Department, alleging his mistreatment as a gay member of the police force.

11

stemming from the criminal case, had possession of the Brusa Note as early as 1996.[4]  Petitioner, with due diligence, would have discovered the Brusa Note earlier than 2002.  See United States v. Potamkin Cadillac Corp., 697 F.2d 491, 493 (2d Cir. 1983), cert. denied, 462 U.S. 1144, 103 S. Ct. 3128, 77 L. Ed. 2d 1379 (1983).

But even if this Court gave Petitioner the benefit of the doubt, Petitioner still did not act with reasonable diligence in pursuing his claim of actual innocence based on the Brusa Note. After learning of the Brusa note in 2002, Petitioner did not file the instant petition until more than two years later in March of 2005.  Therefore, the Petitioner did not act with reasonable diligence.

As for Officer Quinn's homosexual preference, Petitioner raised claims about it in his first motion to vacate the conviction decided in 2001.  The instant habeas corpus petition was commenced in March of 2005: four years after Petitioner knew of Quinn's homosexual preference.  Accordingly, the Court finds that Petitioner did not act with reasonable diligence in pursuing a claim based on this ground either.

Because Petitioner did not act with reasonable diligence, the Court holds that the doctrine of equitable tolling does not excuse Petitioner's failure to comply with the AEDPA time

---

[4]Haberman had obtained Brusa's note in 1996 through a subpoena on the Nassau County Police Department. (Pet'r Mem. 8.)

12

limitations. In light of this ruling, the Court does not address any of Petitioner's other claims regarding ineffective assistance of counsel.

The Court will not issue a certificate of appealability in this case. Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C § 2253. The issues involved in this case are not debatable among reasonable jurors, a court could not resolve the issues in a different manner, and the questions involved do not deserve encouragement to proceed further. See Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

## CONCLUSION

This Court denies Petitioner's writ of habeas corpus as untimely and grants Respondent's motion to dismiss in its entirety. The Court will not issue any certificate of appealability. Petitioner's outstanding discovery requests do not go to Petitioner's claims of equitable tolling. Accordingly, the Court DENIES Petitioner's discovery requests. The Clerk of the Court is ordered to mark this matter as CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   Central Islip, New York
         April 3, 2006